IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN SEILER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:10-41 |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| HOLLIDAYSBURG AMERICAN | ) | |
| LEGION AMBULANCE SERVICE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I.    SYNOPSIS

This matter is before the Court on Plaintiff's three motions for partial summary judgment (docket nos. 19, 41, & 72) Defendant's motion for summary judgment (docket no. 70), and Defendant's motion to compel and motion for sanctions (docket no. 30). This Memorandum Opinion and Order **GRANTS** the motion to compel and **DENIES** the remaining motions for reasons set forth herein.

### II.    JURISDICTION AND VENUE

On February 5, 2010, Plaintiff, Brian Seiler, filed a Complaint alleging that Defendant, Hollidaysburg American Legion Ambulance Service, Inc. (hereinafter "HALAS") violated the Consolidated Omnibus Budget Reconciliation Act (hereinafter "COBRA), the Uniformed Services Employment and Reemployment Rights Act (hereinafter "USERRA"), the Family Medical Leave Act (hereinafter "FMLA"), and the Pennsylvania Wage Payment and Collection Law (hereinafter "PWPCL") during the course of Plaintiff's employ with Defendant.

Jurisdiction is proper pursuant to 38 U.S.C. § 4323(b) (USERRA claims), 28 U.S.C. § 1367

(supplemental jurisdiction covering state law claim), 29 U.S.C. § 2617 (FMLA claim), and 28 U.S.C. § 1331 (general federal question jurisdiction). Venue is proper pursuant to 28 U.S.C. § 1391(b).

III.   **PROCEDURAL AND FACTUAL BACKGROUND**

On September 14, 2010, Plaintiff filed his first motion for partial summary judgment, arguing for judgment in his favor on counts two, five, and six. Count two alleges that Defendant violated the USERA by failing to make 403(b) retirement account contributions while Plaintiff was deployed to Iraq and Afghanistan. Count five alleges that Defendant violated the COBRA by offering Plaintiff the opportunity to continue his insurance effective September 20, 2009, not Plaintiff's termination date of July 8, 2009, causing Plaintiff to incur medical expenses resulting from his wife's August 2009 surgery. Count six alleges a violation of the FMLA, averring that Defendant failed to offer Plaintiff the opportunity to utilize medical leave, as Plaintiff was physically incapable of performing the duties of an emergency medical technician, the position Defendant had offered Plaintiff as a demotion. Pursuant to FED. R. CIV. P. 68, Plaintiff filed Defendant's offer to accept judgment on counts two and five on December 6, 2010; thus, rendering Plaintiff's motion on these counts moot. On January 8, 2011, Plaintiff filed a second motion for partial summary judgment, seeking judgment on count three, an alleged violation of the USERRA based upon lost vacation pay, and count four, an alleged violation of the PWPCA based upon vacation pay not received at the time of termination. On March 19, 2011, Plaintiff filed his third and final motion for partial summary judgment, seeking judgment on count one, an alleged violation of the USERRA resulting from Defendant's termination of Plaintiff's employment.

On March 22, 2011, Defendant reciprocated with a summary judgment motion, contending that Plaintiff is unable to obtain relief under the USERRA because he left his position voluntarily,

Defendant's personnel actions were not motivated by Plaintiff's military service, and because Defendant had cause for removing Plaintiff from a management position due to poor job performance. Defendant further contends that Plaintiff cannot recover under the USERRA for un-awarded vacation time since Plaintiff was not treated differently than non-deployed employees on leave. Defendant also asserts a laches defense to the USERRA claims. Defendant argues that Plaintiff cannot recover under the PWPCL, as he had no legal right to the vacation time he claims, and he cannot recover under the FMLA because he voluntarily left his employment.

In the interest of simplicity, this Court will address the parties' arguments statute-by-statute, starting with the USERRA claims.

## IV.    STANDARD OF REVIEW

### A. SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law. See FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court must evaluate a party's motion for summary judgment construing the alleged facts with all reasonable inferences favoring the nonmoving party. See Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1117 (9th Cir. 2001).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the moving party has met its initial burden

3

with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). Although the initial burden is on the movant to show the absence of a genuine issue of material fact, this burden may be discharged by indicating to the Court that there is an absence of evidence to support the nonmoving party's claims. See Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 193 n.2 (3d Cir. 2001).

## V.    DISCUSSION/ARGUMENTS

### A.        USERRA Claims

The Uniformed Services and Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, et seq., prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). In particular, the act provides:

> **(a)** A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

> **(b)** An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

> **(c)** An employer shall be considered to have engaged in actions prohibited--

4

(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or

(2) under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

(d)   The prohibitions in subsections (a) and (b) shall apply to any position of employment, including a position that is described in section 4312(d)(1)(C) of this title.

Section 4312 provides in pertinent part:

(a) Subject to subsections (b), (c), and (d) and to section 4304, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if--

(1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

(2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

(3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

(e)(1) Subject to paragraph (2), a person referred to in subsection (a) shall, upon the completion of a period of service in the uniformed services, notify the employer referred to in such subsection of the person's intent to return to a position of employment with such employer as follows:

(D) In the case of a person whose period of service in the uniformed services was for more than 180 days, by submitting an application for reemployment with the employer not later than 90 days after the completion of the period of service.

5

(2)(A) A person who is hospitalized for, or convalescing from, an illness or injury incurred in, or aggravated during, the performance of service in the uniformed services shall, at the end of the period that is necessary for the person to recover from such illness or injury, report to the person's employer (in the case of a person described in subparagraph (A) or (B) of paragraph (1)) or submit an application for reemployment with such employer (in the case of a person described in subparagraph (C) or (D) of such paragraph). Except as provided in subparagraph (B), such period of recovery may not exceed two years.

Section 4313 provides in pertinent part:

(a) Subject to subsection (b) (in the case of any employee) and sections 4314 and 4315 (in the case of an employee of the Federal Government), a person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment in accordance with the following order of priority:

(2) Except as provided in paragraphs (3) and (4), in the case of a person whose period of service in the uniformed services was for more than 90 days--

(A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform;....

Section 4316 provides in pertinent part:

(c) A person who is reemployed by an employer under this chapter [38 U.S.C. §§ 4301 et seq.] shall not be discharged from such employment, except for cause—

(1) within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days; or

(2) within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days.

An employee making a USERRA discrimination claim bears "the initial burden of showing by a preponderance of the evidence that the employee's military service was 'a substantial or motivating factor' in the adverse employment action." Sheehan v. Department of the Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (quoting National Labor Relations Bd. v. Transportation Management Corp., 462 U.S. 393, 400-01, 103 S. Ct. 2469, 76 L. Ed. 2d 667 (1983) abrogated by Director, Office of Workers'

6

Compensation v. Greenwich Collieries, 512 U.S. 267, 114 S. Ct. 2251, 129 L. Ed. 2d 221 (1994) (on other grounds)). "If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." Id. Unlike the familiar McDonnell Douglas framework applied in other discrimination cases, the procedural framework and evidentiary burdens set out in § 4311 shift both the burden of persuasion and the burden of production to the employer once the *prima facie* case has been established. Maxfield v. Cintas, 427 F.3d 544, 551 (8th Cir. 2005). Therefore, in USERRA actions there must be an initial showing by the employee that military status was at least a motivating or substantial factor in the employer's decision, upon which the employer must prove, by a preponderance of the evidence, that the adverse action would have been taken regardless of the protected status.

The term "motivating factor" means that if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations. Robinson v. Morris Moore Chevrolet-Buick, Inc., 974 F. Supp. 571, 576 (E.D. Tex. 1997) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 250, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (addressing Title VII gender discrimination claim and related affirmative defense)). In other words, if an employer "relied upon, took into account, considered, or conditioned its decision" on an employee's military status, then the status was a motivating factor. Robinson, 974 F. Supp. at 576.

The factual question of discriminatory motivation or intent may be proven by either direct or circumstantial evidence. Sheehan, 240 F.3d at 1014. Under the USERRA, a discriminatory motive may be reasonably inferred from a variety of circumstantial factors (as discrimination is rarely open or notorious), including: proximity in time between the employee's military activity and the adverse

7

employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses. Sheehan, 240 F.3d at 1014.

Plaintiff contends that there is no dispute as to the fact that he was discharged from employment within one year of being reemployed after returning from his most recent deployment. (Pl.'s Brief in Support of Third Motion for Partial Summary Judgment, docket no. 73, p. 3) Plaintiff cites a June 16, 2009 letter from HALAS President Joseph Nedimyer that referenced "terminate" and/or "termination" four times. Id at 4. Plaintiff further argues that the law makes no distinction between a termination and a demotion for the purposes of evaluating an employer's actions under 38 U.S.C. § 4316. Plaintiff cites Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 286, 66 S. Ct. 1105, 90 L.Ed. 1230 (1946) in support of the proposition that a demotion without cause is legally indistinguishable from a discharge. Fishgold was interpreting the USERRA's early predecessor, the Selective Training and Service Act of 1940; however, courts have continued to rely upon Fishgold when interpreting the USERRA. See Gordon v. Wawa, Inc., 388 F.3d 78, 82 (3d Cir. 2004); Hamovitz v. Santa Barbara Applied Research, Inc., Civil Action No. 07-454, 2010 U.S. Dist. LEXIS 32523 at *21 (W.D. Pa. February 26, 2010); Glasser v. Gov't of the Virgin Islands, 853 F.Supp. 852, 860 (D. V.I. 1994) (citing Fishgold in interpreting seniority provision of the USERRA).

Plaintiff further asserts that his discharge was, by definition, not for cause because Defendant failed to adhere to its own procedural mechanisms for terminating employment. Because the statute does not define "cause," Plaintiff cites 20 CFR § 1002.248, which provides the following definition of "cause:"

8

What constitutes cause for discharge under USERRA?

The employee may be discharged for cause based either on conduct or, in some circumstances, because of the application of other legitimate nondiscriminatory reasons.

(a) In a discharge action based on conduct, the employer bears the burden of proving that it is reasonable to discharge the employee for the conduct in question, and that he or she had notice, which was express or can be fairly implied, that the conduct would constitute cause for discharge.

(b) If, based on the application of other legitimate nondiscriminatory reasons, the employee's job position is eliminated, or the employee is placed on layoff status, either of these situations would constitute cause for purposes of USERRA. The employer bears the burden of proving that the employee's job would have been eliminated or that he or she would have been laid off.

As a general matter, courts defer to an agency's interpretation of an ambiguous statute. Sec'y of Labor v. Trinity Indus., 504 F.3d 397, 400 (3d Cir. 2007) (quoting Reich v. D.M. Sabia Co., 90 F.3d 854, 856 (3d Cir. 1996)). Courts of Appeals in other circuits have relied upon the Department of Labor's interpretation of "cause." Rademacher v. HBE Corp., No. 10-1816, 2011 U.S. App. LEXIS 14339 at *16 (8th Cir. 2011); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006); Mario Living Trust v. Akal. Sec. Inc., No. 09-55320, 377 Fed. Appx. 683, 685 (9th Cir. April 28, 2010) (unpublished). Plaintiff contends that his termination was not for cause because Defendant failed to follow its operating procedures by permitting two ineligible board members to vote on his termination, which had been brought to the table by an ineligible member, and by conducting the board meeting at which he was terminated in his absence.

Defendant disagrees with Plaintiff's assertion that a demotion is equivalent to a discharge under § 4316, as the statute explicitly refers to a "discharge," not a demotion. (Def.'s Brief in Opposition to Pl.'s Third Motion for Summary Judgment, docket no. 89, p. 10) However, Defendant's reasoning directly contradicts Fishgold, in which the Supreme Court noted that "[d]ischarge normally means termination of the employment relationship or loss of a position." Fishgold, 328 U.S. at 286.

9

Even if Defendant is correct in its assertion that Plaintiff could have maintained employment as a paramedic, Plaintiff clearly lost his "position" as Manager of Operations. Accordingly, for purposes of § 4316, Plaintiff need only show that there is no dispute as to the fact that he was demoted without cause.

Plaintiff's count one USERRA arguments fail because there continues to be a dispute as to whether Plaintiff was demoted for cause. Defendant contends that Plaintiff was demoted for cause, citing numerous job performance deficiencies, such as Plaintiff's failure to maintain Defendant's license in good standing, failure to collect on unpaid accounts, failure to confiscate the work cell phone of a terminated employee, failure to suspend an employee charged with a felony, failure to discipline Michael Parisi for using an ambulance for personal purposes, failure to submit a bid on time, and failure to administer policies in a timely manner. Defendant draws support for many of these alleged defect's from Plaintiff's own deposition. Defendant also offers the notes taken by Rodney Estep, Defendant's Board Secretary, which indicate that Plaintiff was warned about his job performance on May 14, 2009, and threatened with replacement at that time. (Def.'s Brief in Opposition to Pl.'s Third Motion for Summary Judgment, docket no. 89, p. 16, Exhibit 4) As previously noted, Plaintiff raises procedural irregularities in support of his contention that he was demoted without cause. Without addressing the merits of any of these procedural arguments, the Court notes that Defendant has offered sufficient evidence to enable a reasonable jury to return a verdict in its favor on this issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). This evidence includes quotations from Plaintiff's own deposition, a declaration of the Board Secretary, and the Board Secretary's notes. This Court does not evaluate the credibility of evidence, see Josey v. John R. Hollingsworth Corp., 996 F.2d 632 (3d Cir. 1993), and concludes that a reasonable jury could combine Estep's declaration and notes with Plaintiff's own testimony to

conclude that Plaintiff's job performance was deficient and that he had notice of this deficiency. Such a reasonable jury could conclude that Plaintiff was demoted for "cause" within the meaning of 20 CFR § 1002.248. Accordingly, Plaintiff's motion on this count is without merit.

Defendant seeks summary judgment in its favor on count one. Defendant argues that Plaintiff voluntarily left his employment. Yet, the Court need not delve into the details of the precise manner in which Plaintiff departed and left HALAS or the comments he made, as Defendant acknowledges demoting Plaintiff. As previously noted, a demotion without cause is sufficient to satisfy the "discharge" requirement of 38 U.S.C. § 4316, based upon Fishgold and subsequent decisions relying upon Fishgold as authoritative in evaluating the progeny of the Selective Training and Service Act of 1940, including the USERRA. Persuasive as Defendant's arguments may be that Plaintiff has offered no evidence indicating that his military service was a motivating factor in this demotion, Plaintiff can still recover pursuant to 38 U.S.C. § 4316 without any showing that his military service was a motivating factor. Instead, § 4316 places the burden on employers to refrain from discharging reemployed veterans without cause. "Because employers have the burden of proving that the discharge was reasonable, it is difficult for employers to achieve summary judgment on claims under § 4316(c)." Francis, 452 F.3d at 308. Defendant has not presented such evidence as to foreclose any reasonable jury from concluding that Plaintiff was demoted without "cause." A reasonable jury could conclude that Plaintiff's alleged deficiencies in job performance were insufficient to constitute "cause," that they did not sufficiently persist after his May 14, 2009, warning, that the May 14, 2009, warning did not allow Plaintiff enough time to improve his job performance, or that Defendant's alleged deviations from internal procedures demonstrate motives other than "cause." Although Defendant has offered sufficient evidence of "cause" to prevent Plaintiff from receiving summary judgment on count one, it has not provided sufficient evidence to prevent any reasonable jury from concluding that Plaintiff was

demoted without cause. Due to the allocation of the burden of proof, Defendant's motion cannot prevail on this count.

Plaintiff also seeks summary judgment in his favor on count three, a claim based upon Defendant's alleged failure to award vacation time in violation of the USERRA. Plaintiff asserts that Defendant did not permit him to accumulate vacation pay while he was deployed. (Pl.'s Brief in Support of Second Motion for Summary Judgment, docket no. 42, p. 2-3) Plaintiff contends that Defendant deviated from its own personnel policy, which awards vacation time at the anniversary of an employee's employment, by awarding vacation time in 1/26 segments with each pay period throughout the year. Id. Defendant responds by noting Plaintiff's admission that HALAS does not award vacation time to any employee during periods of unpaid leave and by arguing that Defendant acted consistent with its policy of limiting employees to carrying over no more than ten days of vacation time from one year to the next. (Def.'s Brief in Opposition to Pl.'s Second Motion for Summary Judgment, docket no. 63, p. 7-8) HALAS further contends that the policy dictates that all vacation time in excess of ten days is forfeited after a year. Id. Because it remains unclear from the record whether Defendant treated Plaintiff's unpaid deployment leave any differently than any other type of leave, this Court finds that either party could prevail on this issue before a reasonable jury and, therefore, both motions are denied as to count three.

Defendant also seeks summary judgment on the USERRA claims based upon a laches defense. Congress has statutorily established the inapplicability of any statute of limitations on USERRA claims. See 38 U.S.C. § 4327; see also Erickson v. U.S. Postal Service, 636 F.3d 1353, 1358 (Fed. Cir. 2011) (noting absence of statute of limitations). Accordingly, laches is the only mechanism by which Defendant can challenge Plaintiff's delay in pursuing his USERRA claims.

Though the Third Circuit does not appear to have addressed laches in a USERRA case, the

Seventh and Fifth Circuits have done so. Laches has been described as the "inequity of permitting a claim to be enforced." Miller v. City of Indianapolis, 281 F.3d 648, 653 (7th Cir. 2002) (quoting Galliher v. Cadwell, 145 U.S. 368 (1892)). In order to prevail on a laches defense, Defendant must show both a lack of diligence on the part of Plaintiff and prejudice to itself. See id. The Fifth Circuit summarizes the test as "inexcusable delay" and "undue prejudice." Rogers et al. v. City of San Antonio, Texas, 392 F.3d 758, 773 (5th Cir. 2004). Plaintiff filed his initial Complaint on February 5, 2010. Plaintiff acknowledges that his earlier deployment to Iraq occurred between November of 2003 through February of 2005. (Pl.'s SMF, docket no. 44, ¶ 2) Thus, it is evident that a portion of his claim could have arisen as long as five years prior to the filing date, the portion relating to vacation time not awarded while deployed. Yet, the bulk of the instant litigation arose when HALAS voted to remove Plaintiff from his management position on July 7, 2009, a decision Defendant acknowledges that Plaintiff would have known by July 8, 2009, when he met with HALAS President Joseph Nedimyer. (Def.'s SMF, docket no. 80, ¶¶ 9-10) Plaintiff filed his initial Complaint within seven months of this adverse employment action. Plaintiff's delay has not been excessive or inexcusable. However, even assuming, *arguendo*, that Plaintiff's delay is inexcusable, Defendant has failed to demonstrate prejudice.

Defendant's claim to prejudice is that it lost the opportunity to resolve Plaintiff's claim to vacation pay via its internal complaint procedure. As a result, Defendant has incurred litigation expenses. This is not sufficient to establish prejudice. Defendant has taken the position that Plaintiff is not entitled to the vacation pay that he seeks. It would be an incredible feat of mental gymnastics to reconcile the desired presumption that Defendant would have resolved the vacation pay claim via an internal complaint mechanism in 2005 and again in 2008, but has taken the position in the instant litigation that Plaintiff is not entitled to the vacation pay and expended resources in defense of this

position. Defendant has failed to demonstrate an undue prejudice sufficient to make it "inequitable" to allow Plaintiff's claim to proceed. Accordingly, Defendant's laches defense is without merit.

### B.    PWPCL Claim

It is well established that the PWPCL does not create a right to compensation, but rather provides a statutory remedy when an employer breaches a contractual obligation to pay earned wages. See DeAsencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003). Plaintiff has filed a motion seeking summary judgment on count four, Defendant's alleged failure to pay Plaintiff the entirety of his accrued vacation pay at the time of his departure from HALAS. (Pl.'s Second Motion for Summary Judgment, docket no. 41) Defendant similarly seeks summary judgment on this count, arguing that it was under no obligation to pay the disputed vacation compensation. (Def.'s Brief in Support of Motion for Summary Judgment, docket no. 81, p. 12-13) For the reasons outlined above in the USERRA section, neither party has demonstrated that no reasonable jury could find in favor of the other party on this issue. More specifically, Plaintiff can offer a section from Defendant's personnel policy indicating that vacation pay is awarded on the "anniversary" of an employee's employment without mentioning any limit on vacation time carried forward. Defendant offers affidavits evidencing a policy limiting vacation time carry-over to ten days. It is not clear to this Court what, in fact, Defendant's vacation time policy was. For this reason, a genuine factual dispute exists, allowing a reasonable jury to decide in favor of either party on this issue. Accordingly, the motions of both parties are denied on count four.

### C.    FMLA Claim

The Family and Medical Leave Act was enacted by Congress in 1993, in part to address problems arising from "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(b)(1). The act was designed to provide a balance between "entitl[ing] employees to take reasonable leave for medical reasons" and

"accommodat[ing] the legitimate interests of employers." 29 U.S.C. §§ 2601(b)(1-2); see Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. § 2601(b)(1)) (holding that one of "[t]he primary purposes of the FMLA [is] to 'balance the demands of the workplace with the needs of families'. . . ."). The FMLA grants eligible employees the right to take up to twelve work weeks of leave during a twelve-month period for any of the following reasons:

> (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
> (B) Because of the placement of a son or daughter with the employee for adoption or foster care.
> (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1)(A-D). At the end of the leave period, the employee has the right to be restored to his or her former position or an equivalent position. 29 U.S.C. § 2614(a)(1).

Under the FMLA, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). In order for a plaintiff to establish a claim for an interference of FMLA rights, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Callison, 430 F.3d at 119.

To state a claim for interference under the FMLA, a plaintiff must show that: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. Lombardo v. Air Products and Chemicals, Inc., No. 06-1120,

2006 U.S. Dist. LEXIS 46077 at *11 (E.D. Pa. July 7, 2006) (citing Weisman v. Buckingham Twp.,

No. 04-4719, 2005 U.S. Dist. LEXIS 11696 at *11 (E.D. Pa. June 14, 2005)).

However, it is also possible to establish a claim for interference by demonstrating that an

employer failed to provide adequate notice of FMLA rights. The Department of Labor has established

the following notice requirements:

§ 825.300 Employer notice requirements.

(a) General notice. (1) Every employer covered by the FMLA is required to post and keep posted on its premises, in conspicuous places where employees are employed, a notice explaining the Act's provisions and providing information concerning the procedures for filing complaints of violations of the Act with the Wage and Hour Division. The notice must be posted prominently where it can be readily seen by employees and applicants for employment. The poster and the text must be large enough to be easily read and contain fully legible text. Electronic posting is sufficient to meet this posting requirement as long as it otherwise meets the requirements of this section. An employer that willfully violates the posting requirement may be assessed a civil money penalty by the Wage and Hour Division not to exceed $ 110 for each separate offense...

(b) Eligibility notice. (1) When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances. See § 825.110 for definition of an eligible employee. Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period (see §§ 825.127(c) and 825.200(b)). All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period.

29 CFR § 825.300. The Seventh Circuit Court of Appeals has persuasively explained that:

Generally speaking, it does not take much for an employee to invoke his FMLA rights; he must simply provide enough information "to place the employer on notice of a probable basis for FMLA leave." Aubuchon, 359 F.3d at 953; see also Stevenson, 505 F.3d at 724-25. The applicable regulations make clear that an employee "need not expressly assert rights under the FMLA or even mention the FMLA" in order to invoke his rights; he need only note that leave is requested for some reason covered by the FMLA. 29 C.F.R. § 825.303(b); see also Aubuchon, 359 F.3d at 953 (the employee must provide enough information to establish "probable cause" to believe the employee may qualify for FMLA

leave).

Righi v. SMC Corp. of America, 632 F.3d 404, 409 (7th Cir. 2011). In Righi, the Court was reviewing a District Court decision to grant summary judgment in favor of an employer based upon an e-mail the employee had sent in which he explicitly indicated that he did not intend to use FMLA leave at that time. The Seventh Circuit concluded that the lower court had erred, as the e-mail left open the possibility that the employee might want to use the FMLA, thus making it an error to grant summary judgment when viewing the facts in the most favorable light to the nonmoving party. Id.

Based upon the clear language of § 825.303 and the Seventh Circuit's persuasive discussion in Righi, Defendant's motion on count six cannot succeed. In viewing the facts in the light most favorable to the non-moving party, Defendant clearly has reason to know that Plaintiff might want to exercise his rights under the FMLA, as HALAS President Joseph Nedimyer testified that he offered Plaintiff the paramedic position when his health permitted him to perform his duties at that position. (Pl.'s Brief in Support of Third Motion for Summary Judgment, Exhibit 6, p. 22) If an employee's e-mail that merely left open the possibility of a future desire to utilize FMLA rights was sufficient to survive summary judgment in Righi, then Defendant's actual knowledge of Plaintiff's inability to execute the paramedic duties due to a health condition is sufficient to survive Defendant's summary judgment motion.

Although Plaintiff has offered sufficient evidence to survive Defendant's summary judgment motion, he has not offered such evidence as to preclude a reasonable jury from finding that Defendant was not under an obligation to provide FMLA notice, as a material dispute exists as to whether Plaintiff declined to accept the offered demotion to a paramedic position. Nedimyer testified that Plaintiff responded to the offer with a statement about being a man and taking the news like a man before packing up his personal possessions and leaving HALAS without returning. (Def.'s Statement

of Material Facts, ¶¶ 13-15). Based upon Plaintiff's conduct and statements, a reasonable jury could conclude that Plaintiff had declined Defendant's offer. Accordingly, Plaintiff's motion is denied as to count six.

### D.    Discovery

Defendant's motion to compel and accompanying motion for sanctions arise from a letter transmitted from Plaintiff's counsel to Defense counsel on November 11, 2010. (Def.'s Motion to Comp., docket no. 30, Exhibit A) In this letter, Plaintiff's counsel stated "This is to advise that I have broken a rule of professional conduct." Id. Counsel explains that he had twice communicated with "Michael Paris, [1]" Defendant's employee, and offered to refrain from calling the employee as a witness "to avoid any prejudice to HALAS." Defense counsel promptly replied with a letter that was also dated November 11, 2010, in which she thanks Plaintiff's counsel for his candor and requests copies of all correspondence with Parisi, the return of any documents supplied by Parisi, and an explanation of how Parisi obtained any documents supplied. Id. at Exhibit B. On November 14, 2010, Plaintiff's counsel transmitted a letter to Defense counsel in which he takes the position that his communications with Parisi had not, in fact, violated Pennsylvania Rule of Professional Conduct 4.2, reasoning that Parisi was a bargaining unit employee who would not supervise, direct or consult with Defendant's counsel. Id at Exhibit C. Defendant contends that Parisi held a management-level position during the time period at issue in the litigation *sub judice*, causing him to be in possession of Defendant's "confidential, proprietary" information. Id. at 3.

As a general matter, federal law governs the conduct of attorneys practicing in federal courts. In re Snyder, 472 U.S. 634, 645 n.6 (1985). This Court, as part of the Western District of Pennsylvania, has adopted Pennsylvania's Rules of Professional Conduct pursuant to Local Rule of

---

[1]        Subsequent letters, briefs, and depositions identify this individual as "Michael Parisi."

Civil Procedure 83.3(A)(2). Rule 4.2 states that:

> In representing a client, a lawyer shall not communicate about the subject of the
> representation with a person the lawyer knows to be represented by another lawyer in the
> matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by
> law or a court order.

Comment 7 explains that:

> In the case of a represented organization, this Rule prohibits communications with
> a constituent of the organization who supervises, directs or regularly consults with the
> organization's lawyer concerning the matter or has authority to obligate the organization
> with respect to the matter or whose act or omission in connection with the matter may be
> imputed to the organization for purposes of civil or criminal liability. Consent of the
> organization's lawyer is not required for communication with a former constituent. If a
> constituent of the organization is represented in the matter by his or her own counsel, the
> consent by that counsel to a communication will be sufficient for purposes of this Rule.
> Compare Rule 3.4(f). In communicating with a current or former constituent of an
> organization, a lawyer must not use methods of obtaining evidence that violate the legal
> rights of the organization. See Rule 4.4.

The Restatement of the Law Governing Lawyers (3d) § 102 offers the additional guidance that a
lawyer communicating with a non-client "may not seek to obtain information that the lawyer should
reasonably know that the non-client cannot reveal without violating a duty of confidentiality to another
imposed by law."

Both the plain language of Comment 7 and the decisions of other courts to have addressed
similar issues belie Plaintiff's simplistic, categorical position that only those who are currently in
management positions are covered by Rule 4.2. Comment 7 can be divided into a three-part inquiry: 1)
the extent to which Parisi supervises, directs, or communicates with Defendant's counsel regarding the
instant litigation; 2) the extent to which Parisi has the authority to obligate Defendant regarding the
instant litigation; and 3) the extent to which Parisi's acts or omissions in connection with this litigation
may be imputed to Defendant.

In Penda Corp. v. STK, LLC., the Middle District addressed a similar issue in which an

attorney's paralegal contacted an employee of STK to ask where STK's products were sold. The Court determined that the employee was not a genuine manager, but that his statements could still constitute an admission by STK if the statements were made while on duty as an employee. Civil Action No. 03-5578, NO. 03-6240, 2004 U.S. Dist. LEXIS 13577, *13-*14 (E.D. Pa. July 16, 2004). Because such statements could constitute an admission, it was not necessary for the court to address the third prong of the Comment 7 analysis, namely, the extent to which the employee's comments could be imputed to STK. Id.

In the matter *sub judice*, the employee in question had once held a management position with Defendant and he is still employed by Defendant. As a result, it is conceivable that this employee could have disclosed privileged materials obtained while communicating with HALAS counsel or he could have made statements that constitute admissions on Defendant's behalf. Defendant cannot reasonably assess any potential Rule 4.2 violation without having access to these communications. For the same reason, this Court cannot fairly consider Defendant's motion for sanctions without having access to the communications at issue. As a result, Defendant's motion to compel is granted and its motion for sanctions is dismissed without prejudice to re-filing once Defendant has had an opportunity to review these communications.

## VI.    CONCLUSION

Therefore, Plaintiff's Motions for Summary Judgment (Docket nos. 19, 41, & 72) are **DENIED**, Defendant's Motion for Summary Judgment (Docket no. 79) is **DENIED**, Defendant's Motion to Compel (Docket no. 30) is **GRANTED**, and Defendant's Motion for Sanctions (Docket no. 30) is **DENIED WITHOUT PREJUDICE**.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN SEILER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:10-41 |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| HOLLIDAYSBURG AMERICAN | ) | |
| LEGION AMBULANCE SERVICE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this 8th day of September, 2011, this matter coming before the Court on Plaintiff's Motions for Summary Judgment against Defendant (Docket nos. 19, 41, & 72) (the "Plaintiff's Motions") and Defendant's Motion for Summary Judgment (Docket no. 79) (the "Defendant's Motion"), and Defendant's Motion to Compel and Motion for Sanctions (Docket no. 30), IT IS HEREBY ORDERED that the Plaintiff's and Defendant's motions for summary judgment are DENIED, that Defendant's Motion to Compel is GRANTED, and that Defendant's Motion for Sanctions is DENIED WITHOUT PREJUDICE.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE